The opinion of the Court was drawn up by
Tenney, C. J.
This suit is upon a sealed instrument, purporting to be the official bond of Henry J. Shaver, as the collector of taxes of the town of Readfield, for the municipal year 1857, and his sureties. The sureties deny their liability, on the ground that they consented to be the sureties of the collector solely on the condition that the bond should be executed by those whose names appear *41 thereon, together with Moses Whittier, who refused to become a party, after his name had been inserted in the body of the bond by the scrivener, who drew'the instrument, the said Whittier and the other persons whose names were inserted, having been deemed sufficient, by the town, expressed by a vote in open town meeting.
Evidence was introduced to show that, after the principal and three of the sureties had signed their names, on its being ascertained that Whittier declined to place his name upon the bond as a surety, his name was erased from the body thereof, and subsequently the other sureties added their signatures.
The great questions in the ease were whether the sureties, who executed the bond before the erasure of the name of Whittier, had consented to bo holden by word or act, or both, after they had been informed that he had refused to become a surety; and whether those who affixed their names to the instrument afterwards did it under such circumstances as to render them liable ; and also whether the bond, if executed, so that the obligors could make no objection to the execution, had been approved by the selectmen, according to law, and delivered so as to become effectmñ. The evidence on these questions was not in harmony, one portion with another. But, under the instructions given to the jury by the presiding judge, a verdict was rendered for the plaintiffs, which is sought to be vacated on a motion, because it was against the evidence adduced and for other reasons stated in the motion. The conclusion of the Court is, that the verdict cannot be disturbed on the motion, consistently with the principles well settled applicable to the facts of the case.
The question is then presented, whether the Court erred in any of the rules of law, which it stated to the jury, or whether it erroneously withheld any instructions which were requested by the defendants, to be given to the jury, in matters of law.
The counsel in defence requested that twelve instructions, *42 reduced to writing, should be given to the jury; five of which, the first, third, fourth, fifth, and seventh were given as requested; the others were refused, given with qualifica-' tions, or were embraced in the general instructions.
The second requested instruction was, "that, to constitute such a waiver of the condition,” [that'all whose names were in the body of the bond should execute it.according to the evidence, which was not in controversy,] "the party must be informed that Whittier was not to sign; and consent that it should be delivered as his bond without his name.” This request assumes that the party could be legally holdeu only by express consent, given upon, information, that the one whose name was erased was not to become a surety. The general instructions were substantially as follows : — That if any or all of .the sureties, whose names were on the bond, placed them there with the condition before stated, and that the bond should not be delivered, without the fulfilment of that condition, it would not be binding on them, unless they waived that condition subsequently. But if they signed the bond without any condition, but for the purpose of indemnifying the town for any omission of official duty of the principal, and the bond was left to be delivered and used for the purpose for which it was signed, and it was so delivered, the delivery would be valid and the signers would be bound, notwithstanding at the time of its execution they might have expected that all who were accepted by a vote of the town, would become sureties on the bond. These instructions are more comprehensive than the one requested, which we are considering, and were not objectionable ; and were all under the request to which defendants were entitled.
The last instruction requested had relation to the execution of the bond by those who affixed their names thereto, after the erasure of the name of Whittier in the body thereof, and was, "If any of the sureties signed the bond in pursuance of the agreement made at the town meeting, after the erasure of Whittier’s name, but without knowing it, or knowing that he was not to sign, and, at the time of signing, *43 annexed the condition that it should not he delivered without all signed whose names were accepted by the town, they would not be held.” This instruction was not given.
When a party executes an instrument, which, from its terms, creates a liability, he is ordinarily supposed to know its contents and every thing apparent upon it, and affected accordingly, if no fraud was practised upon him, which in this case is not pretended. But whether a surety, in fact, signed the bond after the erasure, or a knowledge that Whittier was not to sign, or otherwise, is a question wholly immaterial under this request, as the general instructions, to which we have referred, embrace the case supposed, whether this knowledge existed or not; and the liability was made to depend upon the fact, that the sureties who signed, did not annex the condition, that the bond was not to be delivered till it was signed by all whose names were on the list accepted by the town.
The sixth and seventh instructions requested were not given in the terms of the reqtiest, but were in substance a compliance therewith.
The -eighth and ninth instructions requested, that if the jury find that the officers of the town neglected to enforce a collection of the taxes, and the paying over the money on the part of Shaver, to Oct. 23, 1858, or to take the tax bills from him, this would be such laches on the part of the town, as would release the sureties from all liabilities for defalcation subsequent to the time when said officers were legally required to do so. And that that time was when the year was out, March, 1858. Such instructions have no statute or common law principle for their support.
The tenth and eleventh requests were, that the jury might be instructed that the plaintiffs can .only recover damages for what they prove were actual deficits of the tax of 1857 ; and that the burden is on the plaintiffs to show what part, if any, of the sum of §495,93, said to be due on the two years, was in fact a deficit of 1857, and they can recover only so far as they show that. These instructions were giv *44 en, with the qualification, that if Shaver was collector for the years 1856 and 1857, it was his duty to settle and pay over for both of those years, and he had a right to appropriate all payments made during the second year, at the time they were made, to the year to which he wished them applied. If he failed to make such appropriation, then the town would have the right to appropriate such payments as they might desire; and, if no appropriation was made by either, the law would appropriate such payments to the oldest debts. If payments were made when there was only one liability, and that for the year 1856, in the absence of any appropriation by the parties, the law would apply them to that year; so that, if the parties made no appropriation, in this case, the whole of the deficit of the sum of $495,93 might be regarded as having occurred during the last year, and, if so, would be recoverable in this suit, with interest from the time it ought to have been paid.
It was proved that, about Oct. 23, 1858, a partial settlement was made with Shaver, in behalf of the town, for the years 1856 and 1857; that there was a balance of the sum of $195,93 on both years, for money collected by him and not paid over; the amount of uncollected taxes taken from him, and he was credited for so much. Amount of uncollected commitment of 1856 was $14,98, and due on the bills. Uncollected taxes of 1857 were $102,43. It was not ascertained how much was the deficit in unpaid collections of the year 1856 or of 1857. There is a suit pending upon the bond of 1856, and the signers are not the same as those upon the bond of 1857.
It was for the defendants to show what part of this deficit belonged to one year and what to the other. The principal on the bonds is supposed to have the means of doing this, by the receipts taken by him, or by other modes. In the absence of all evidence on this question, we cannot assume that either party made the appropriation to one year or the other. Hence the money which he paid from time to time must be treated as his own, and the law will make the ap *45 propriation thereof to discharge the liability which first accrued. That being done, and the amount of the collections which arc withheld by the collector being fixed, the liability falls upon the obligors of the bond of 1857. The instructions wore in accordance with this principle.
Exceptions are taken to the amendment of the verdict, allowed by the Court, in changing the name of the principal defendant, so as to conform to the writ and all the papers in the case. This was the correction of the error of the clerk in preparing the blank verdict, which escaped the attention of the jury. The authorities cited for the plaintiffs to sustain the propriety of the amendment of the verdict, for a cause which existed and was apparent, upon inspection by the Court, are full and conclusive.

Motion and exceptions overruled.

Judgment on the verdict.

Rice, Mat, Goodenow, Davis and Kent, JJ., concurred.